NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-410


MARK ANTHONY LAFLEUR

VERSUS

CATHERINE ANN REED LAFLEUR


**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 76,193-B
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of D. Kent Savoie, Candyce G. Perret, and Charles G. Fitzgerald, Judges.


**AFFIRMED.**

**William J. Cutrera**
**Attorney at Law**
**2380 Lake Street**
**Lake Charles, Louisiana 70601**
**(337) 433-4903**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Catherine Ann Reed Lafleur**

**Jonathan C. Vidrine**
**Attorney at Law**
**Post Office Drawer 1019**
**Ville Platte, Louisiana 70586**
**(337) 363-2772**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Mark Anthony Lafleur**

**SAVOIE, Judge.**

This matter involves a community property partition. Mark Anthony Lafleur appeals the judgment of the trial court, denying certain reimbursement claims he filed against his ex-wife, Catherine Ann Reed Lafleur. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mark and Catherine were married on November 24, 2013. Mark filed for divorce in 2015; however, the parties briefly reconciled and the 2015 petition for divorce was dismissed. The parties permanently separated in February 2016, and Mark filed another petition for divorce in April 2016. Mark and Catherine were granted a Judgment of Divorce on October 18, 2016.

On August 7, 2017, Mark filed a Petition for Judicial Partition of Community Property, which was heard over several days. The trial court ruled that Mark is owed reimbursement in the sum of $6,159.96 for payments made on the automobile which was Catherine's separate property. The trial court further ruled "that all other claims, causes of action, claims for reimbursement either by Mr. Lafleur against Ms. Reed or Ms. Reed against Mr. Lafleur are hereby dismissed." Mark now appeals.

## ASSIGNMENTS OF ERROR

1. Whether the trial court committed error in denying [Mark's] reimbursement claims except for the car payments, when said reimbursements were proven at the trial of this matter through testimony and exhibits filed into evidence.

2. Whether the trial court erred in finding that the reimbursement for [Mark's] separate property that was used for the benefit of the community was not reimbursable.

3. Whether the trial court erred in accepting the trial testimony of the parties on the actual partition action, and [by] not making a decision as to the values, possession, and classifications.

## LAW AND DISCUSSION

In the recent case of *Christie v. Christie*, 21-359, pp. 3-4 (La.App. 3 Cir. 1/26/22), ___So.3d___, ___, a panel of this court explained:

It is well recognized that an appellate court is not to set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). In order to reverse the findings of the trial court, a two-tiered test must be applied: (a) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and (b) the appellate court must further determine that the record establishes that the finding of the trial court is clearly wrong (manifestly erroneous). *Mart v. Hill*, 505 So.2d 1120 (La.1987).

"The trial court is vested with great discretion in effecting a fair partition of community property." *Arterburn v. Arterburn*, 15-22, p. 4 (La.App. 3 Cir. 10/7/15), 176 So.3d 1163, 1167 (citing *Collier v. Collier*, 00-1263 (La.App. 3 Cir. 7/18/01), 790 So.2d 759, *writ denied*, 01-2365 (La. 12/7/01), 803 So.2d 30). Reasonable determinations and inferences of fact should not be disturbed on appeal, even when the appellate court believes its inferences are more reasonable than those of the fact finders. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Further, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings, even if it is convinced that had it been sitting as trier of fact, it would have weighed that evidence differently. *Housley v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

Mark first complains that the trial court denied all but one of his claims for reimbursement. He contends that his separate funds were used to satisfy community obligations, and he is thus entitled to reimbursement. The following is a list of Mark's reimbursement claims:

## Mark's Savings Account

Mark argues that he had $10,007.69 in his savings account before the marriage. He states this amount was used by the community and requests reimbursement in the amount of $5,003.85.

Catherine contends that the evidence presented by Mark on this claim is insufficient. She states that he relies on a statement dated October 31, 2013, which shows a balance of $8,740.12. The parties were married on November 24, 2013. Catherine argues that Mark failed to provide evidence that showed what the balance was in the account on the day of the marriage. In addition, she argues that he failed to provide evidence of a bank statement after the marriage to prove the money was no longer in the account or proof that this separate money was spent on the community.

## Catherine's Credit Union Deposits

Mark alleges that Catherine withheld portions of her paycheck from the community, and, instead, deposited the money in her separate Credit Union account. He claims that the total amount of monies withheld is $33,587.35, and he requests half of this amount, $16,793.68, be reimbursed to him.

Catherine argues that the car payments, which were ordered to be reimbursed to Mark, were paid from the Credit Union account. Mark was awarded $456.29 per month for a total of $6,159.96. By seeking reimbursement for half of the money placed into this account, Catherine contends that Mark is seeking to double-dip. Additionally, Catherine paid numerous community expenses from the Credit Union account. Catherine argues that Mark failed to recognize the community expenses that Catherine paid from her separate account when making his calculation.

*Medical Insurance Payments*

Mark is requesting reimbursement in the amount of $1,060.00 for certain medical insurance payments he made on behalf of the family. He claims to have paid the "family premium" which was $462.17 per month. This amount included insurance coverage for Mark, his daughter Shelby, and Catherine. The "single premium," which would only include coverage for Mark, was $197.23 per month. He argues that he is owed the difference between the two premiums ($264.94) divided by two ($132.50) for the eight months that he paid for family coverage insurance. This amount equals $1,060.00.

First, Catherine counters that it is unclear why Mark is requesting reimbursement for an eight-month period when the community terminated on April 29, 2016, when the Petition for Divorce was filed, and the Judgment of Divorce was signed October 18, 2016. This is a period of less than six months. Regardless, Catherine points out that Mark failed to provide any documentary evidence supporting his position. He did not provide proof of health insurance in the form of a copy of the policy or policy number, nor did he provide documentary evidence of the cost of the health insurance. There is no proof in the record of the amount of a single plan premium versus the family plan premium, and he failed to provide proof that he paid the premiums. Further, Catherine argues that Mark acknowledged that he provided medical insurance for his daughter, Shelby; therefore, Catherine contends that Mark would have paid the monthly premium for a family plan regardless of whether Catherine was covered under the policy.

*Automobile Insurance*

Mark claims that he paid the monthly premium for the automobile insurance coverage on Catherine's separate vehicle. He argues that he paid $61.60 over an

eight-month period; therefore, he requests reimbursement in the amount of $493.28 ($61.60 x 8) from Catherine.

Catherine's argument against Mark's claim for reimbursement of automobile insurance payments is the same as her argument against the medical insurance payments – Mark failed to provide documentary evidence. Mark did not provide any proof that Catherine's car was insured by Allstate, how much the premium was that he paid, nor any receipts showing he paid the alleged premiums. She also argues that it is unclear why he is requesting eight months of reimbursement instead of approximately six months.

### .38 Caliber Pistol

Mark claims to have purchased two pistols totaling $499.00. One of these pistols was a gift for his daughter Shelby, and he claims the other pistol was taken out of the home by Catherine when she left. He requests reimbursement from Catherine in the amount of $249.50 for both pistols.

Catherine argues that the pistol was a gift from Mark. She testified that the pistol in question was one that fit Catherine's hand and was specifically for her. Catherine further states that Mark failed to establish a value for the pistol at the time of the trial. While Mark testified to the value of the pistol at the time of purchase, he failed to provide a value for a used pistol at the time of trial. Catherine contends that the trial court did not err in failing to reimburse Mark for this claim.

### Mortgage Payments

Mark claims he is owed $8,986.55, which amounts to half the balance of the mortgage as of April 2019. However, at another point in his brief, he argues that he is owed $11,280.00. This amount accounts for half of a tax refund he received

for installing solar panels on his house. Mark explains that he borrowed $72,000.00 to install a solar generator system in his home prior to the marriage. He states that this loan would have been paid by refunds from the State and Federal Government. Mark claims that he received $22,587.56 as a tax refund for the solar panels, and this money was placed in his and Catherine's joint checking account. Apparently, the parties used the refund on a vacation instead of paying back the mortgage loan. Mark alleges that the balance on the mortgage was $22,587.56, the same amount as the tax refund. Because he could not pay the balance on the loan due to spending the tax refund check on a vacation, Mark had to refinance the mortgage. He now requests reimbursement from Catherine; however, the amount he is requesting is unclear.

Catherine states that the home is his separate property. He borrowed the $72,000.00 prior to the marriage, making the debt his separate obligation. She argues that there is no evidence in the record that substantiates his claim that the $22,587.56 was deposited in the joint account. In fact, Catherine points out that there is no evidence in the record that he received the tax refund. Mark did not produce any bank statements or other documents to establish his receipt of a refund, date of the refund, where the money was deposited, amount of the refund, or what expenses were paid with this refund. The trial court found that any money that was received as a refund and placed in the joint account was so commingled that a determination about what was separate and what was community could not be made. Catherine contends that the trial court clearly had insufficient evidence to substantiate this reimbursement claim.

*Shotguns*

Mark alleges that three shotguns worth $1,500.00 were found to be missing from the gun safe shortly after Catherine moved out. Mark claims that Catherine stole them because they were the only two people with the combination to the safe. He believes he should be reimbursed the full $1,500.00.

Catherine counters that Mark offered no proof that Catherine took the guns or that she has them in her possession. Catherine testified that she did not have the combination to the safe, and Mark admitted she told him that she could not open the safe. Catherine points out that Mark did not file a police report to report the shotguns missing. On Mark's Detailed Descriptive List, he listed two shotguns and two X-treme guns were in his possession. Catherine further points out that he did not allege Catherine had the guns in her possession on the Detailed Descriptive List.

*Thirty Boxes of Bullets*

Thirty boxes of .38 caliber bullets were also found to be missing from the gun safe according to Mark for which he requests reimbursement. He alleges the ammunition was worth $900.00, and he is requesting reimbursement in the amount of $450.00 for the missing bullets.

Catherine argues that at trial, Mark did not know how many boxes of bullets were missing from the closet. She states that he made a guess based on the size of the cubby hole from which they were missing. While he did not produce evidence that Catherine took the ammunition, she admitted during her testimony that she took some of the ammunition for her gun. She estimated that she took fifteen boxes of ammunition, which she stated were not full. She further contends that Mark did not present any evidence regarding the value of the bullets. Finally, she

argues that Mark testified that he kept all of his ammunition in this closet and that he measured the area of the missing bullets, meaning there was ammunition left in the closet. Catherine contends that the trial court could have surmised that the ammunition left in the closet (and, therefore, in Mark's possession), and the ammunition that Catherine took with her were equal in value and declined to award reimbursement.

*Skymiles*

Mark alleges that he earned Skymiles before the marriage that were used by him and Catherine during the marriage to take a trip to the Bahamas. Mark values the Skymiles used at $2,050.00. As such, he requests reimbursement from Catherine in the amount of $1,000.00.

Again, Catherine argues that Mark failed to provide any documentary evidence related to this claim. She states that he failed to establish that he had Skymiles, when they were acquired, whether the skymiles were used, for what they were used, or how they were acquired. No statement of these Skymiles were introduced into evidence. In addition to the lack of evidence regarding the Skymiles, there is no evidence that these Skymiles could be redeemed for cash. As such, Catherine claims that the trial court did not err in denying Mark's claim for reimbursement of the Skymiles.

In its Reasons for Judgment, the trial judge stated, "The trial consisted strictly of the testimony between the Plaintiff and Defendant and the testimony was at the opposite ends of the spectrum. Basically, whatever Mr. Lafleur asserted Ms. Reed denied and what Ms. Reed asserts Mr. Lafleur denied." The reasons went on to explain:

This Court previously stated that it could not make a determination of who owes what to another without the assistance of a forensic accountant and gave the parties a chance to hire one. Neither party hired a forensic accountant to determine what payments were made or what money was deposited so this Court is still left in the dark just as it was in January of 2020.

The trial court found that the only reimbursement claim it could determine with certainty was the reimbursement of car payments on Catherine's car. The trial court ruled that Mark was owed reimbursement in the sum of $6,159.96 for payments made on the automobile, which was Catherine's separate property. The trial court further ruled that all other claims, including claims for reimbursement either by Mark or Catherine were dismissed.

"The provisions of La. R.S. 9:2801 set forth the procedure by which a trial court is to partition community property when the spouses are unable to agree on the division of assets and liabilities." *McLaughlin v. McLaughlin*, 17-645, p. 3 (La.App. 5 Cir. 5/16/18), 247 So.3d 1105, 1109. These procedures are mandatory. *Id.* Louisiana Revised Statutes 9:2801(A)(4)(a) provides, "The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties." The community should be divided so that each spouse receives an equal net value. La.R.S. 9:2801(A)(4)(b). "The burden of proof is on the party claiming reimbursement." *McLaughlin*, 247 So.3d at 1115. "A trial court's findings as to whether reimbursement claims have been sufficiently established are reviewable under the manifest error standard of review." *Id.*

In light of the great discretion afforded to trial judges in effecting a fair partition of community property, we cannot find manifest error in the trial court's ruling. As explained in the Reasons for Judgment, the parties' testimony were at odds on every issue. Faced with a he-said/she-said situation, the trial judge

9

ultimately found that neither party carried their burden of proof regarding their claims for reimbursement. Only Mark appealed. Yet Mark, for the most part, introduced no documents into evidence to support his reimbursement claims. After a thorough review of the record, we find that Mark failed to carry his burden of proving his listed claims for reimbursement. The trial court was not manifestly erroneous in denying Mark's claims for reimbursement.

Finally, Mark complains that the trial court "erred in accepting the trial testimony of the parties on the actual partition action, and not making a decision as to the values, possession, and classification." Mark did not particularize the items about which he is complaining. In *McLaughlin*, 247 So.3d at 1111, the court explained, "It is incumbent upon the parties to present evidence at the partition trial regarding the value of the assets." The record reflects that the trial court valued and partitioned the entire former community in accordance with La.R.S. 9:2801. This assignment is without merit.

## DECREE

The judgment of the trial court is affirmed. Costs of this appeal are assessed against Mark Anthony Lafleur.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

10